1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

5

6

7

| | |
|---|---|
| MELINDA N. C., [1] | NO:  2:22-CV-00058-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 11.  This matter was submitted for consideration without oral

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  See Local Civil Rule 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

argument.  Plaintiff is represented by attorney Christopher H. Dellert.  Defendant is represented by Special Assistant United States Attorney Justin L. Martin.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 11, is granted.

## JURISDICTION

Plaintiff Melinda N. C. (Plaintiff), filed for supplemental security income (SSI) on June 20, 2018, and alleged an onset date of February 15, 2017.[3]  Tr. 188-204.  Benefits were denied initially, Tr. 104-112, and upon reconsideration, Tr. 114-24.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 15, 2021.  Tr. 53-76.  On October 25, 2021, the ALJ issued an unfavorable decision, Tr. 12-30, and on February 3, 2022, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[3] The alleged onset date was amended to the filing date at the hearing.  Tr. 57.

Plaintiff was 32 years old at the time of the hearing.  Tr. 57.  She graduated from high school.  Tr. 58.  She has work experience as a process server, grocery store courtesy clerk, and day care worker.  Tr. 69-71.  Plaintiff testified that she cannot work due to chronic fatigue, pain, and moodiness.  Tr. 59.  She has shortness of breath from sarcoidosis in her lungs.  Tr. 59.  She has fibromyalgia pain in her back, hips, knees, ankles, shoulders, and chest.  Tr. 59-60.  She gets headaches and has carpal tunnel syndrome.  Tr. 60.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing

such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant

is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is

disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 20, 2018, the application date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:  fibromyalgia, sarcoidosis, and obesity.  Tr. 17.  At step three, the ALJ found that does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> She can never crawl or climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, or climb stairs.  She can frequently handle and finger objects bilaterally.  She must avoid unprotected heights.  She cannot be exposed to more than occasional occurrence of pulmonary irritants such as smoke and dust in excess of an office setting.  She is limited to performing simple, routine tasks with a Specific Vocational Preparation (SVP) of 2 or less.

Tr. 20.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 25.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as marker, cashier, and router.  Tr.

26-27.  Thus, the ALJ found Plaintiff has not been under a disability as defined in the Social Security Act since June 20, 2018, the date the application was filed.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's severe impairments;

2.    Whether the ALJ properly evaluated Plaintiff's symptom testimony;

3.    Whether the ALJ properly evaluated the medical opinions; and

4.    Whether the ALJ the RFC finding and hypothetical to the vocational expert included all of Plaintiff's limitations.

ECF No. 10.

## DISCUSSION

### A.    Step Two

Plaintiff contends the ALJ should have included chronic pain disorder, migraines, and depression/mood disorder as severe impairments.  ECF No. 10 at 5. At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source.  20 C.F.R. § 416.921.  A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment.

*Id*. After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). However, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See* e.g., *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Step two is not meant to identify the impairments that should be considered when determining the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (S.S.R.) 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Thus, the ALJ must consider the effect of all impairments, including medically determinable but non-severe impairments, in evaluating the RFC. 20 C.F.R. § 416.945(a)(2).

    *1. Chronic Pain Disorder*

ORDER - 9

Plaintiff contends the ALJ failed to discuss probative evidence of chronic pain disorder[4] at step two.  ECF No. 10 at 5-6.  The ALJ need not discuss all evidence presented but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  As Plaintiff observes, the ALJ did not specifically discuss chronic pain disorder.  Tr. 17-18.

Plaintiff cites records noting pain symptoms or chronic pain.  ECF No. 10 at 5-6 (citing Tr. 545, 577, 717, 1057-58, 1634, 1687, 1741).  As noted above, a medically determinable impairment must be established by objective medical evidence and may not be based on a statement of symptoms, a diagnosis, or a

---

[4] In the DSM-IV, pain disorder was a recognized mental disorder and a subcategory of somatoform disorders.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed. at 445.  The DSM-V, published in 2013, includes pain disorder within a new diagnostic criterion called "somatic symptom and related disorders." The common feature of this disorder category is that individuals have "somatic symptoms associated with significant distress and impairment."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5th Ed. at 445.  The introduction indicates that the description of the diagnosis is to be made "on the basis of positive symptoms and signs (distressing somatic symptoms plus abnormal thoughts, feelings, and behaviors in response to these symptoms) rather than the absence of a medical explanation for somatic complaints. *Id.*

medical opinion. 20 C.F.R. § 416.921. There is no indication that chronic pain disorder is a medically determinable impairment independent of Plaintiff's other impairments. The cited records include diagnoses of sarcoidosis, fibromyalgia, depression, mood disorder, and notations of pain or chronic pain. *See* e.g., Tr. 577, 717, 1057-58, 1634, 1687. It is noted that Dr. Byrd mentioned "diffuse somatic complaints" in October 2019, but did not make any specific findings. Tr. 545. Plaintiff points to no records establishing chronic pain disorder as an independent medically determinable impairment.

Furthermore, even if chronic pain disorder should have been a medically determinable impairment in this case, there is no indication of any functional limitations related to chronic pain disorder which were not addressed by the ALJ with respect to other conditions. Plaintiff argues "[t]he nature of these impairments [pain] would cause her to be off-task, memory losses and absences from work." ECF No. 10 at 6 (citing Tr. 282, 1282, 1456-57). However, the records cited by Plaintiff do not support such limitations. Page 282 of the transcript is Plaintiff's pre-hearing brief and not evidence of the claimed limitations. Page 1282 of the transcript is an office visit record primarily discussing Plaintiff's history of obesity and not mentioning pain, concentration, memory loss, or absence from work. Pages 1456-57 are the results of Plaintiff's patient health questionnaire (PHQ) for November 16, 2020, which is a self-report of symptoms of depression and not evidence of functional limitations. The record does not reasonably support a finding

that chronic pain disorder is a severe impairment and the ALJ did not err by not

addressing it.

### 2. Headaches

Plaintiff argues the ALJ erred by finding Plaintiff's migraine headaches are

not a severe impairment. ECF No. 10 at 6. The ALJ found that Plaintiff's

migraine/headaches were "a long-term issue for which the claimant has had

relatively limited treatment during the period at issue." Tr. 17. The ALJ concluded

the medical evidence does not indicate that Plaintiff's headaches resulted in more

than minimal functional limitations for a continuous 12-month period and concluded

they are non-severe. Tr. 17.

Plaintiff argues the ALJ's rationale was that Plaintiff "did not receive

treatment," ECF No. 10 at 6, which is inaccurate. Plaintiff cites records from

February 2020 and September 2020, both of which indicate that Plaintiff reported

having had migraines since her teens, which reasonably suggests, as the ALJ found,

that headaches are a long-term issue predating the relevant period. Tr. 17, 1866,

1910. Furthermore, Plaintiff does not address the ALJ's finding that the record does

not reflect that Plaintiff's headaches meet the duration requirement. The regulations

provide that "[u]nless your impairment is expected to result in death, it must have

lasted or must be expected to last for a continuous period of at least 12 months. We

call this the duration requirement." 20 C.F.R. § 416.909. Plaintiff has not

established that her headaches created a significant work-related impairment of

1   sufficient duration.  As a result, the ALJ reasonably found that Plaintiff's headaches

2   are not a severe impairment.

3       *3. Depression/Mood Disorder*

4       Plaintiff argues the ALJ should have found her depression/mood disorder is a

5   severe impairment.  ECF No. 10 at 7-8.  The ALJ found Plaintiff's depression is

6   medically determinable but not severe.  Tr. 18-19.  The ALJ reviewed evidence that

7   Plaintiff's mood disorder has often been described by her treating psychiatrist, Dr.

8   Mahler, as stable.  Tr. 18, 941, 948, 1059, 1374, 1533.  Plaintiff reported

9   improvement with psychotropic medication.  Tr. 18, 457, 932, 941, 946, 963, 965,

10  975, 1305, 1315.  The ALJ noted that reports of increased mental symptoms have

11  typically been attributed to situational stressors.  Tr. 18, 1003, 1044, 1046, 1296-97.

12  The ALJ also observed that Plaintiff has repeatedly declined recommendations of

13  psychotherapy.  Tr. 18, 457, 1215, 1373, 1417, 1437, 1522.  Mental status exams

14  have typically been unremarkable.  Tr. 18, 353-54, 361, 456, 465, 946-47, 963,

15  1030, 1044, 1058, 1131, 1174, 1239, 1254, 1296, 1304, 1380, 1548, 1762.  The ALJ

16  noted that in June 2021, Dr. Mahler found Plaintiff had good working memory,

17  answered questions linearly, showed insight into her problems, and was making

18  good progress.  Tr. 18, 1255-56.  The ALJ also considered the "paragraph B" criteria

19  and found no more than mild limitations in any functional area.  Tr. 18-19.  Thus,

20  the ALJ found Plaintiff's depression is non-severe.

21

1    Plaintiff disagrees with the ALJ's interpretation of the record and cites records

2    from Dr. Mahler related to his diagnosis of mood disorder and Plaintiff's reported

3    symptoms.  ECF No. 10 at 7-8, 15-16, 19 (citing Tr. 545, 577, 1044-46, 1057, 1059,

4    1214).  As noted *supra*, the fact that a medically determinable condition exists does

5    not automatically mean the symptoms are "severe" or "disabling" as defined by

6    Social Security regulations.  *See*, e.g., *Edlund*, 253 F.3d at 1159-60; *see also Key*,

7    754 F.2d at 1549-50 ("[t]he mere diagnosis of an impairment [] is not sufficient to

8    sustain a finding of disability.").  While Plaintiff contends the ALJ's consideration

9    of the mental health records was "selective," it is Plaintiff who relies on one record

10   to demonstrate that her mental impairments were not stable.  ECF No. 10 at 15-16

11   (citing Tr. 1046-48); ECF No. 12 at 11.   As noted above, there are multiple

12   notations over the longitudinal record from Plaintiff's treating psychiatrist indicating

13   that her mental health was stable.  Tr. 18 (citing e.g., Tr. 941, 948, 1059, 1374,

14   1533).  Plaintiff argues her mental health symptoms "waxed and waned," but does

15   not so demonstrate with citations to the longitudinal record.  ECF No. 10 at 16.

16   Plaintiff also incorrectly argues that normal mental status exams have "no bearing"

17   regarding mood disorder or depression.  ECF No. 12 at 11.   Mental status

18   examinations are objective measures of an individual's mental health.  *Buck*, 869

19   F.3d at 1049.  The ALJ reasonably relied on substantial evidence to find depression

20   medically determinable but not severe at step two.  *See Burch v. Barnhart*, 400 F.3d

21

676, 679 (2005) (ALJ's finding upheld when evidence is susceptible to more than one rational interpretation).

Moreover, even if the ALJ's finding was improper, Plaintiff does not identify how depression symptoms resulted in limitations beyond those in the RFC finding. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); see also *Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination). The ALJ considered the impact of pain on Plaintiff's mental functioning in evaluating Plaintiff's residual functional capacity. Tr. 20-23. The RFC includes a limitation to simple, routine tasks which reasonably accounts for any impairment in the ability to concentrate, persist, or maintain pace. Tr. 20, 23. Plaintiff does not acknowledge that the ALJ included mental limitations in the RFC, has not established any greater limitation, and has not otherwise shown that the ALJ erred.

**B.    Symptom Testimony**

Plaintiff contends the ALJ improperly considered her symptom testimony. ECF No. 10 at 14-17. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).

Although Plaintiff argues the ALJ's discussion "was simply a summary of the

treatment record," ECF No. 10 at 15, the ALJ gave three reasons for finding

Plaintiff's functioning is not as limited as alleged. Tr. 21-22. Plaintiff also asserts

the ALJ "did not specifically find Plaintiff's allegations to be undermined by any of

these elements." ECF No. 12 at 11. However, the ALJ specifically linked these

reasons to the limitations alleged. Tr. 22.

First, the ALJ found Plaintiff's reports of daily activities to her providers are

inconsistent with more robust activities than alleged in her function report. Tr. 20-

21. It is reasonable for an ALJ to consider a claimant's activities which undermine

claims of totally disabling pain in assessing a claimant's symptom complaints. *See

Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ observed that

Plaintiff reported her day-to-day activities included taking care of children, going to

the beach, camping, hanging with family, and not working (Tr. 352, 360); she takes

care of her three-year-old child (Tr. 419); and she is independent in all activities of

daily living (Tr. 541). Tr. 20-21.

The ALJ further noted that Plaintiff variously reported that she was "carrying much of the burden for caring for family and extended family" (Tr. 426); she was "feeling overwhelmed with care obligations" (Tr. 1238); she had "a lot of obligations in her home" (Tr. 1173); "[a] lot is expected of her, and she does not get a lot of help around the house" (Tr. 1003); she was "doing pretty much everything around the house," (Tr. 1380); she was "overburdened by responsibilities at home" (Tr. 1057); and she was taking care of many family issues and family medical issues (Tr. 1254). The ALJ found her care for her family and home was inconsistent with her function report suggesting that her parents, with whom she lived, were helping her with activities of daily living like childcare, preparation of meals, chores, and shopping. Tr. 21, 228-35. It was reasonable for the ALJ to find an inconsistency between Plaintiff's reported activities and her allegations. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (effective October 25, 2017) ("The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record."). Plaintiff does not address the inconsistency or her daily activities. ECF No. 12 at 6. The ALJ's finding is supported by substantial evidence.

Second, the ALJ found the objective evidence is not consistent with disabling limitations. Tr. 21. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428,

1434 (9th Cir.1995). While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857.

The ALJ reviewed the records regarding sarcoidosis, noting that in November 2018, she had not been seen by pulmonology for three years. Tr. 21, 463. Later that month she established care with a pulmonologist, Dr. Malik, whose physical exam revealed no abnormal findings. Tr. 423. He noted that her symptoms had been present for many years (i.e., before the alleged onset date) and were nonprogressive. Tr. 424. In December 2018, Dr. Malik indicated that Plaintiff's sarcoidosis was in a dormant state and she could be seen on an as-needed basis. Tr. 443. In May 2019, Plaintiff experienced severe abdominal pain and imaging revealed splenic infarct which was attributed to her sarcoidosis. Tr. 22, 770, 781, 1145. In June 2019, Plaintiff was again seen in the ER for abdominal pain, but imaging showed the infarcted area was stable and no pathology was found to explain Plaintiff's symptoms. Tr. 22, 635. By August 2019, her pain had improved and bleeding had stopped. Tr. 22, 1121.

In January 2020, Plaintiff's only complaint during an annual exam was right ear pain. Tr. 21, 1029. Exam findings were normal and she was found to be a "healthy overweight woman." Tr. 1030. Despite a BMI in the range of obesity, Plaintiff typically demonstrated normal range of motion and gait. Tr. 22 (citing e.g.,

Tr. 739, 1124, 1144, 1189, 1390). A cardiac workup for chest pain in November 2020 was unrevealing, Tr. 1460, 1470, and a cardiac MRI in February 2021 showed no evidence of cardiac sarcoidosis. Tr. 22, 1663. The ALJ also noted numerous exam findings indicating positive tender points for fibromyalgia, but no overt evidence of active synovitis. Tr. 22 (citing Tr. 350, 358, 578, 718, 739, 1635, 1660, 1688, 1742, 1790, 1893, 1938-39). The ALJ reasonably concluded that the longitudinal medical record is not consistent with the level of limitation alleged. Tr. 22. The existence of a legally supportable alternative resolution of the evidence does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987).

Third, the ALJ found Plaintiff's treatment improved her symptoms. Tr. 22. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Plaintiff often reported to her rheumatologist Dr. Byrd that Lyrica and other medications were helpful. Tr. 22 (citing e.g., Tr. 661, 1789, 1824, 315, 361). Plaintiff argues that citing improvement with medication means the ALJ selectively considered the record and suggests the ALJ ignored findings of pain, fatigue, and fibromyalgia. ECF No. 12 at 11 (citing Tr. 443, 545, 577, 717, 1634, 1660, 1687, 1741, 1789, 1824, 1892, 1938). Plaintiff also argues the ALJ failed to consider

records demonstrating chronic pain from fibromyalgia.  ECF No. 12 at 11 (citing Tr.

546, 578, 718, 1635, 1742, 1939.  To the contrary, the ALJ specifically noted many

of these records and included limitations in the RFC accounting for pain and

physical limitations from fibromyalgia and other impairments.  Tr. 20-22 (citing e.g.,

Tr. 577/9F62, 717/9F202, 1634/12F58, 1660/12F83, 1687/12F111, 1741/12F165.).

Nonetheless, improvement with medication is a reasonable consideration.

Furthermore, even if this reasoning is not particularly well-supported or convincing,

the ALJ provided other clear and convincing reasons supported by substantial

evidence.  Any error would therefore be harmless.  *See Carmickle*, 533 F.3d at 1162-

63.

## C.    Medical Opinions

Plaintiff argues the ALJ failed to properly evaluate the opinions of John

Mahler, M.D., and James C. Byrd., M.D. Ph.D.  ECF No. 10 at 8-14.

For claims filed on or after March 27, 2017, the regulations provide that the

ALJ will no longer "give any specific evidentiary weight…to any medical

opinion(s)…"  *Revisions to Rules Regarding the Evaluation of Medical Evidence*,

2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c.

Instead, an ALJ must consider and evaluate the persuasiveness of all medical

opinions or prior administrative medical findings from medical sources.  20 C.F.R. §

416.920c(a) and (b).  Supportability and consistency are the most important factors

in evaluating the persuasiveness of medical opinions and prior administrative

findings, and therefore the ALJ is required to explain how both factors were

considered.  20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required, to

explain how other factors were considered.  20 C.F.R. § 416.20c(b)(2); *see* 20

C.F.R. § 416.920c(c)(1)-(5).

    *1.  John Mahler, M.D.*

    Plaintiff argues the ALJ erred by failing to discuss "multiple opinions" of

Dr. Mahler, a psychiatrist.  ECF No. 10 at 9.  Defendant argues that statements in

Dr. Mahler's treatment notes do not qualify as medical opinions and the ALJ was

not obliged to analyze them as such.  ECF No. 11 at 10.

    For claims filed after March 27, 2017, a medical opinion is a statement from

a medical source about what you can still do despite your impairments and whether

you have impairment-related limitations or restrictions in the ability to perform the

physical, mental, environmental, or other demands of work activities.  20 C.F.R. §

416.913(a)(2).

    Plaintiff argues the following records from Dr. Mahler constitute medical

opinions which should have been specifically discussed by the ALJ:

- December 2018: "Mood disorder with depressive features due to medical condition.  I don't think patient meets the criteria for major depressive disorder DSM-V diagnoses.  Having said that, the impact of patient's physical illnesses on her mental functioning is significant, and warrants consideration and attention.  She has responded well to [medication] and reports benefit from ongoing medications."  Tr. 429.

- May 2019: "Mood disorder is an established problem that is not stable.  [Plaintiff] continues to struggle with mood and anxiety symptoms.  She reports today additional symptoms, including more

about family history of depression including suicide attempts. I think that the connection between her chronic pain and her mood remains, in that I have not diagnosed a major depressive disorder. Her mental health symptoms are real and the focus of treatment, but there is a clear chronic condition that symptoms stem from and are closely tied to. She should understand that other providers may disagree." Tr. 1214-15.

- November 2019: "[P]atient reports the following: She is back on Namenda for fibromyalgia, and scheduled with neurology in 12/11 for headache management. Ongoing pain and headaches. Returned stabbing, severe pain in chest intermittently. Her father locked away weapons so she doesn't have access to means. Some intermittent suicidal thoughts with Namenda, less severe than before. Still overburdened by responsibilities at home. Trying to maintain positive outlook. C/o mood swings and increased anger, short burst, yelling, frustration. Despair about age, lack of independence from her parents, not being married." Tr. 1057.

- June 2020: "Mood disorder with depressive features due to medical condition is an established problem that is relatively stable on combination of SSRI and atypical buspirone. She tolerates these medications well. Trial off of medications did not go well at all, with increased emotional distress and dysregulation. I recommend she continue current doses of these medications. Pain syndromes continue to limit function. She continues to be a good support to her family and extended family. I see consistent signs of good connection with her daughter." Tr. 941.

- September 2020: "Mood disorder, nicotine dependence and fibromyalgia are established problems. Mood disorder relatively stable, though ongoing agitation and irritability. This symptom is not consistent with what would be seen with a bipolar disorder. I still think chewing tobacco cessation has played a role, as the chewing tobacco helped her deal with anxiety and emotion for a long time, and now she has not replaced that with a more health coping strategy yet. I am glad she stopped, and I think that over time will find more healthy alternatives. Fibromyalgia remains an important factor and a state of constant fatigue and pain with [sic] certainly make it more difficult to be patient and calm in all settings. I encouraged avoiding the negative bias and black-and-white thinking, instead recognizing

that experiencing emotion is not a negative thing, and trying to take a more nuanced approach to her experiences."  Tr. 1533.

Plaintiff also cites "Patient Reported Data" which is clearly not opinion evidence. Tr. 1048.  ECF No. 10 at 9; ECF No. 12 at 5-6.

None of these records reasonably constitutes a medical opinion within the meaning of the regulations.  Dr. Mahler's statements that the impact on mental functioning "is significant," her mental symptoms "are real," and pain "continues to limit function" fall into the category of "other medical evidence" which includes judgments about the nature and severity of the impairments, medical history, clinical findings, diagnosis, treatment prescribed and response, or prognosis.  20 C.F.R. § 416.913(3).  Certainly, none of these records indicate what Plaintiff "can do despite [her] impairments," nor do they address "impairment-related limitations or restrictions" in the ability to perform specific physical, mental, environmental, or other demands of work activities.  20 C.F.R. § 416.913(2).  As a result, the ALJ was not required to consider Dr. Mahler's treatment records as medical opinion evidence.[5]

2.  *James C. Byrd, M.D., Ph.D.*

_____

[5] It is noted that the ALJ discussed Dr. Mahler's records in detail in evaluating Plaintiff's mental impairments.  Tr. 18-22.

ORDER - 23

Dr. Byrd completed DSHS WorkFirst medical or disability documentation forms in December 2017, July 2018, and November 2018. Tr. 319-21, 323-25, 370-72. In December 2017, he indicated that Plaintiff was unable to participate in work and was "severely limited," defined as unable to lift at least 2 pounds or unable to stand or walk. Tr. 323-25. In July 2018, he opined that Plaintiff was unable to participate in work and was limited to sedentary work, defined as able to lift 10 pounds maximum and frequently lift or carry articles like files and small tools and able to sit, walk, and stand for brief periods. Tr. 319-21. In November 2018, Dr. Byrd indicated that Plaintiff "can't participate in meaningful employment" and again opined that Plaintiff was severely limited and unable to lift 2 pounds or unable to stand or walk. Tr. 370-72.

The ALJ found Dr. Byrd's opinions are not persuasive. Tr. 24. First, with regard to supportability, the ALJ found that the opinions are not supported by any explanation or references to objective medical findings. Tr. 24. The regulations provide that the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1)-(2). Indeed, Dr. Byrd's opinions contained very little explanation and virtually no objective findings. Tr. 319-21, 323-25, 370-72. He mentioned pain due to fibromyalgia and listed medications and treatment, but otherwise did not explain his conclusions. Tr. 319-

20, 324, 370-71.  The ALJ's finding regarding supportability is supported by substantial evidence.

Second, with regard to consistency, the ALJ found that Dr. Byrd's opinions are not consistent with the record as a whole.  Tr. 24.  The regulations provide that the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ observed that Plaintiff's activities indicate that she is more functional than opined by Dr. Byrd, such as doing a lot at home, taking care of her child, and helping family.  Tr. 24 (citing Tr. 360, 426, 641, 1003, 1057, 1173, 1238, 1254, 1380).  The ALJ further found the objective evidence is not consistent with Dr. Byrd's opinion, as discussed *supra*.  Tr. 24 (citing Tr. 424, 443, 739, 1030, 1124, 1189, 1390).   Lastly, the ALJ found that Plaintiff often reported medication for her fibromyalgia symptoms have been helpful.  Tr. 24 (citing Tr. 1660, 1789, 1824, 1892, 1938).

Plaintiff argues the ALJ "cherry picked" evidence and ignored evidence that her symptoms waxed and waned.  ECF No. 10 at 11-12.  Plaintiff's citations to the record do not demonstrate that the ALJ ignored evidence of varying symptoms.  In fact, the ALJ cited many of the same records cited by Plaintiff.  *See* e.g., Tr. 577/9F62, 717/9F202, 1634/12F58, 1660/12F83, 1687/12F111, 1741/12F165.  The ALJ considered the opinion of Dr. Byrd based on the record as a whole, not just on notations of active fibromyalgia, depression, and tender points cited by Plaintiff.  Tr.

24; ECF No. 10 at 11-13.  Plaintiff also cites a December 2018 oxygen saturation reading and January 2019 spirometry test reading and suggests the ALJ's findings regarding Plaintiff's sarcoidosis were not supported.  ECF No. 10 at 13.  However, Plaintiff does not address the ALJ's findings regarding sarcoidosis discussed *supra*, nor point to any findings in Dr. Byrd's opinions which contradict those findings.  The ALJ's findings regarding consistency with the record are supported by substantial evidence.

Third, the ALJ found that Dr. Byrd's opinions contain statements about the ultimate issue of disability which is reserved to the Commissioner.  As such, the ALJ found they are not valuable or persuasive.  Tr. 24.  The regulations provide that statements that a claimant is or is not disabled, able to work, or able to perform regular or continuing work are statements on issues reserved to the Commissioner and are neither inherently valuable or persuasive.  20 C.F.R. 1520b(c)(3).   To the extent Dr. Byrd's opinions are opinions that Plaintiff cannot work, the ALJ's finding is reasonable and supported by substantial evidence.

**D.    RFC and Hypothetical**

Plaintiff argues the ALJ erred at step five because the vocational expert's opinion was based on an incomplete hypothetical.  ECF No. 10 at 17-18.  The ALJ's hypothetical must be based on findings supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and

supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes the ALJ erred in considering Plaintiff's allegations and the medical opinion evidence. The ALJ's reasons for rejecting the opinions of Dr. Byrd were legally sufficient and supported by substantial evidence, discussed *supra*. The ALJ therefore properly excluded limitations assessed by Dr. Byrd from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** January 24, 2024.

LONNY R. SUKO
Senior United States District Judge

ORDER - 28